## No. 17,710.

Don Davis Mabray *v.* George S. Williams.

(291 P. [2d] 677)

Decided November 28, 1955.   Rehearing denied January 16, 1956.

Messrs. Gordon & Gordon, for plaintiff in error.

Mr. Alfred Todd, Mr. John C. Statler, for defendant in error.

Mr. OAKLEY WADE, Amicus Curiae.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

BOTH parties to this record are physicians. The defendant in error (hereinafter referred to as plaintiff, or Dr. Williams) instituted a suit in the trial court against the plaintiff in error (hereinafter referred to as defendant, or Dr. Mabray) for an injunction to restrain the latter from practicing his profession in Lamar, Colorado, in violation of a restrictive covenant in a written contract between plaintiff and defendant.

The complaint, after stating the professional character of the parties, and that plaintiff had long been a practitioner in Lamar, Colorado; had at great expense erected and equipped a Medical Center consisting of some twenty rooms, and had a large and lucrative practice. Defendant was a young physician, having been licensed but a few years prior to the date of the contract. He had never practiced medicine on his own account, and his professional experience was limited to that which he acquired as a doctor in the service of the United States Army. Plaintiff needed an assistant. Having been contacted by defendant, plaintiff entered into a written contract whereby defendant was employed by Dr. Williams, at a stipulated salary. This contract, dated August 1, 1950, was denominated "Contract of Employment." It contained the following paragraph: "IV. During the period this contract is in effect and force, the said employee [Dr. Mabray] shall not practice medicine except under the terms of his agreement, within an area of 50 miles surrounding Lamar, Colorado, without first obtaining the written consent of the said George S. Williams, and in no event shall the said Don Davis Mabray practice medicine within a 50-mile area surrounding Lamar, Colorado, for a period of 5 years from the date of termi-

nation of this contract without first obtaining the written consent of George S. Williams."

It was alleged that defendant entered into said employment and continued to perform services under the written contract until March 3, 1955; that from time to time changes in his compensation were agreed upon; that on March 3, 1955, defendant left said employment and immediately established an office in Lamar, Colorado, where he practiced his profession, and since said date has continued to so practice medicine and surgery. It was alleged, and not disputed at the trial, that no written consent on the part of Dr. Williams was ever obtained authorizing defendant to independently practice medicine in Lamar, Colorado.

Plaintiff prayed for an injunction restraining defendant from practicing his profession in Lamar, Colorado, and for damages for the alleged breach of the contract of employment.

Defendant in his answer admitted the execution of the contract of employment; admitted he was engaged in the general practice of medicine in Lamar, Colorado, and alleged that the contract was changed and amended by the parties thereto in December, 1950; that by said change defendant's compensation was to be twenty per cent of the net profits of the business "carried on by said plaintiff and defendant to August 1, 1951; from and after August 1, 1951, plaintiff was to pay defendant 25 per cent of the net income from said business and to increase at the rate of 5 per cent per year to take effect on August 1 of each and every year thereafter until the defendant was receiving 50 per cent of the net profit of said business, at which time the defendant was to purchase a one-half interest in the building, equipment and business for the sum of forty thousand dollars," said sum to be payable in installments; that in April, 1953, said oral agreement was orally changed so that said purchase of the building, equipment and business was to take effect January 1, 1955.

As a further defense defendant alleged that he "relied upon certain statements made to defendant by plaintiff in December of 1950, April of 1953 and July of 1953, and changed his position in reliance thereon, and the plaintiff is estopped to now assert the provisions of Paragraph IV * * *." Defendant further alleged that in October, 1954, he informed the plaintiff that he "was ready, willing and able to carry out the agreement in existence between the parties, but the plaintiff then and thereafter refused to permit the defendant so to do."

Upon the trial the court found the issues in favor of plaintiff and issued the injunction prayed for, but did not award plaintiff any damages. From the injunctive decree defendant brings the cause here by writ of error.

For reversal of the decree it is urged by counsel for plaintiff in error that the trial court erred in failing to find that plaintiff was estopped by his conduct and agreements from enforcing the provisions of the restrictive covenant; that the trial court erred in finding that the September 28, 1950, contract was the contract under which defendant was working in March, 1955, when he opened his own office. Other matters are urged but need not be considered, for they constitute findings made by the trial court on conflicting evidence, and under the oft repeated rule we cannot revise such findings.

The parties to this action doubtless thought that eventually this arrangement between them would result in some sort of a partnership.

Plaintiff's Exhibit "B" entered into on May 2, 1953, between Dr. Williams and his wife, together with Dr. Mabray, was entitled "Survivor Purchase Agreement." Its intention as expressed was that the parties would make provision for contingencies which might arise should Dr. Williams die. It recited: "Whereas third party [Dr. Mabray] is a young physician and surgeon who entered the practice of medicine at Lamar, Colorado, on or about the 1st day of August, 1950, upon a salaried basis as an employee of first party [Dr. Wil-

liams] and whereas third party is now such an employee; and whereas third party desires to make provision for acquisition by him of adequate facilities and equipment for his own medical practice in the event of the death of first party;" and it then was agreed upon the death of Dr. Williams that Dr. Mabray would purchase and pay $80,000 for the real estate and personal property of the Medical Center. It was also agreed how such payment should be made. In this same agreement the parties stated: "It is expressly understood that the parties hereto contemplate the making of another agreement to supersede this agreement on or about the 1st day of January, 1955. It is, therefore, expressly agreed that this agreement shall terminate as to all parties, and become null and void, upon execution of the subsequent contract, above referred to, or at twelve o'clock noon, M.S.T. on the 10th day of January, 1955, whichever first occurs." No such subsequent agreement was ever made and defendant terminated his employment in March, 1955, at a time when the "Survivor Purchase Agreement" had by its express terms terminated.

Defendant would invoke the doctrine of estoppel in pais as a defense to the instant action. The vital principle of equitable estoppel is that a person who by his language or conduct leads another to do what he would not otherwise have done may not subject such person to loss or injury by disappointing the expectations on which he acted. This principle in equity stands on the foundation of fair dealing.

We are at a loss to determine from the record here submitted where Dr. Williams induced Dr. Mabray to believe or suppose that he would not rely on the provisions of paragraph IV of the employment contract. True, the parties made other agreements respecting the property owned by Dr. Williams and the medical practice he had. The record is replete with testimony that Dr. Williams placed all the income from the clinic in his name in the Bank, accounted to Dr. Mabray each month

for his compensation, and withheld the usual Federal taxes incident to the employment of Dr. Mabray. Never at any time did the latter tender to Dr. Williams the consideration which he says he was to pay for an interest in the business. He claims in his pleading that he was ready, willing and able to make payment, but he never made a tender, and in his defense of this case he did not demand enforcement of the alleged contract of purchase and sale.

The trial court found no estoppel existed. We have carefully searched the record, and the findings of the trial court are amply supported thereby. We said in *Johnson v. Neel,* 123 Colo. 377, 299 P. (2d) 939 that estoppel in pais is founded upon principles of fair dealing and is designed to aid the law in the administration of justice where without its aid injustice might result. We cannot say from this record that the granting of the injunction resulted in injustice.

*Freudenthal v. Espey,* 45 Colo. 488, 102 Pac. 280, is directly in point. As in the instant case, the parties were physicians. It was there said: "Here there is an express covenant, with full performance by one, and certain mischief arising from its breach by the other. * * * The reasonable and fair protection to which the plaintiff is entitled can only be obtained by the parties conforming expressly and exactly to the terms of the contract. The defendant is in the wrong. He is deliberately doing what he plainly agreed not to do. The equities are with the plaintiff and the decree is accordingly affirmed."

Such, under this record, must be our holding in the instant case. The decree is affirmed.