491 P.2d 87 (1971)
Richard W. GIBSON, Plaintiff in Error,
v.
Richard H. ANGROS et at., Defendants in Error (two cases).
Richard H. ANGROS et al., Plaintiffs-Appellees,
v.
Richard W. GIBSON, Defendant-Appellant.
Nos. 70-180, 70-179 and 70-183, (Supreme Court Nos. 24033, 24257.)
Colorado Court of Appeals, Div. II.
September 28, 1971.
Rehearing Denied October 27, 1971.
Certiorari Denied December 20, 1971.
*88 Jorge E. Castillo, Denver, for plaintiff in error (No. 70-180 and No. 70-179) and defendant-appellant (No. 70-183).
Davis, Graham & Stubbs, Thomas S. Nichols, John M. Sayre, Denver, for defendants in error (No. 70-180 and No. 70-179) and plaintiffs-appellees (No. 70-183).
Selected for Official Publication.
DWYER, Judge.
Two writs of error transferred from the Supreme Court and an appeal to this court, all involving the same parties, were consolidated for disposition pursuant to stipulation of the parties. Richard W. Gibson, plaintiff in error and appellant, and the individual defendants in error and appellees are all licensed physicians. All parties were associated under a partnership agreement for the practice of their profession in a group known as the Boulder Medical Center.
The controversies between the parties involve a covenant not to compete contained in the partnership agreement. The judgments on review were all adverse to Gibson. In the first action, the trial court, by declaratory judgment, upheld the validity of the covenant. In a subsequent action, the trial court first granted a preliminary injunction, and later entered a permanent injunction, prohibiting Gibson from practicing medicine in violation of the covenant. Gibson seeks reversal of these adverse judgments.

The Declaratory Judgment
The Boulder Medical Center was established in 1948. Gibson is an ophthalmologist who moved to Colorado in April of 1964, after seven years of practice in Shreveport, Louisiana. He commenced practice as an employee of the Center in April of 1964. After practicing as an employee of the Center for seventeen months, Gibson executed the partnership agreement in issue which contained the following provision:
"(e) Each party hereto covenants and agrees with each other party that he will not retire voluntarily from the partnership and resume private practice within the County of Boulder and State of Colorado at any time within the five years immediately following the date of such retirement * * *."
On February 27, 1968, Gibson wrote a letter to the partnership expressing his dissatisfaction with partnership practice and *89 asked to be "released" from the partnership. He asked the members of the partnership to waive their rights under the covenant and consent to his practicing in Boulder County. The partnership denied the request, and Gibson, on May 1, 1968, filed his complaint seeking a judicial determination that the covenant not to compete was invalid. The partnership did not challenge the availability of relief by way of declaratory judgment, but in their pleadings, the partners sought to have the covenant declared valid.
Upon the basis of the evidence presented, the trial court found that Gibson, while an employee of the group, had an opportunity to become acquainted with the members of the partnership and to become familiar with the nature and extent of the medical practice of the partnership; that at the termination of his employment, he was not subject to a restrictive covenant, but elected to sign the partnership agreement; that prior to signing the agreement, the covenant was fully explained to him; and, that he had a complete knowledge and understanding of its terms and effect. The court further found that under the circumstances in the case the covenant not to compete was reasonable, both in terms of duration and geographic scope.
Upon the basis of these findings, the court entered judgment upholding the validity of the covenant and further decreed that injunctive relief would be available to the partnership if Gibson violated the covenant.
It is the general rule in Colorado that a covenant not to compete is valid and enforceable by injunction if under all the facts and circumstances of a particular case it is reasonable both in terms of duration and geographic scope. Sprague's Aetna Trailer Sales, Inc. v. Hruz, Colo., 474 P.2d 216; Zeff, Farrington & Associates, Inc. v. Farrington, 168 Colo. 48, 449 P.2d 813; Addressograph-Multigraph Corp. v. Kelley, 146 Colo. 550, 362 P.2d 184; Mabray v. Williams, 132 Colo. 523, 291 P.2d 677; Freudenthal v. Espey, 45 Colo. 488, 102 P. 280.
Gibson concedes the general rule but argues that the covenant, as applied to him, was invalid because the partnership had no legitimate interest which it was entitled to have protected by the covenant. Gibson asserts that the covenant is part of a "scheme" designed by the partnership to prevent any voluntary withdrawals from the partnership and that the covenant forces involuntary servitude upon those members of the partnership who do not desire to remain as its members. Gibson claims that the interest which the partnership seeks to protect, that is, the prevention of the withdrawal of any partner who intends to compete with the partnership, is one which contravenes public policy and is not entitled to protection.
Arguments similar to the one presented by Gibson have been rejected by our Supreme Court in cases which had upheld the validity of covenants not to compete in contracts between physicians. In Freudenthal v. Espey, supra, a doctor, who had been practicing medicine in the City of Trinidad, Colorado, for eighteen years, employed a young inexperienced physician who agreed not to practice medicine in Trinidad for a period of five years following termination of his employment. Upon termination of his employment, the younger physician immediately commenced the practice of medicine in Trinidad. He was thereafter enjoined and on appeal he argued that the covenant was unreasonable and contrary to public policy. Our Supreme Court stated that the covenant was reasonable under the circumstances; that its object was to protect the covenantee against unfair competition; and that it was neither forbidden by, nor contrary to, any principle of public policy or law.
In a later case, Mabray v. Williams, supra, the plaintiff was an established physician in the City of Lamar, Colorado. He employed a younger doctor who agreed *90 that upon termination of his employment he would not practice medicine within a fifty-mile area surrounding Lamar for a period of five years. The younger doctor, upon termination of his employment, immediately started practicing in Lamar. He was enjoined. In upholding the injunction our Supreme Court stated:
"Freudenthal v. Espey, 45 Colo. 488, 102 P. 280, 286, 26 L.R.A.,N.S., 961, is directly in point. As in the instant case, the parties were physicians. It was there said: `Here there is an express covenant, with full performance by one, and certain mischief arising from its breach by the other * * * The reasonable and fair protection to which the plaintiff is entitled can only be obtained by the parties conforming expressly and exactly to the terms of the contract. The defendant is in the wrong. He is deliberately doing what he plainly agreed not to do. * * *'"
Gibson attempts to distinguish Freudenthal and Mabray on the basis that the withdrawing physicians in both cases were inexperienced general practitioners at the time they commenced practice with their respective physician-employers. Gibson argues that these cases are not applicable to the present case because at the time he commenced practice with the partnership he was an experienced specialist, whereas the withdrawing physicians in Freudenthal and Mabray acquired experience through their association with their respective physician-employers. The distinction is not valid. Gibson knowingly and voluntarily agreed to be bound by the covenant. Although he may not have acquired experience through his association with the partnership, he did obtain an immediate economic advantage by engaging in group practice with them. The partnership, which afforded this economic benefit to Gibson, is entitled, under the rules announced in Freudenthal and Mabray, supra, to the protection of the covenant. Accordingly, the judgment upholding the validity of the covenant is affirmed.

The Injunctions
The judgment upholding the validity of the restrictive covenant was entered on October 18, 1968. On March 10, 1969, Gibson sent a notice to the partnership which stated in part, "* * * I hereby elect to dissolve the Boulder Medical Center Partnership effective as of March 15, 1969." Gibson disassociated himself from the partnership and began private practice within the County of Boulder. On May 27, 1969, he performed two surgical procedures at the Boulder Community Hospital, and on June 9, 1969, he treated a patient at the same hospital. The partnership then brought an action to enforce the covenant not to compete, and on June 16, 1969, Gibson was temporarily enjoined from practicing medicine within the County of Boulder.
Thereafter, the court, sitting without a jury, tried the case to determine whether a permanent injunction should issue. The trial court found that the notice Gibson served on the partnership constituted a withdrawal by Gibson from the partnership, that the withdrawal was voluntary, and that upon his voluntary withdrawal Gibson was bound by the covenant not to compete. The trial court further found that unless restrained by the court, Gibson would continue to practice medicine in violation of the covenant and that such practice would cause irreparable loss to the partnership. The court concluded that Gibson should be permanently enjoined from practicing medicine in violation of the provisions of the agreement.
In seeking reversal, Gibson argues that his notice of March 10, 1969, operated to dissolve the partnership and that because of such dissolution he was no longer bound by the covenant not to compete. The partnership agreement, which contained the restrictive covenant, also provided:
"15a A partner may voluntarily retire or withdraw from the partnership at any time, upon the terms and conditions hereinafter stated. *91 * * * * * * "20 The partnership shall not be terminated in consequence of the retirement, voluntarily or involuntarily, * * * of any partner. On the contrary, the partnership shall continue on the terms herein provided * * *."
Gibson's notice of dissolution constituted a voluntary retirement under the terms of the partnership agreement, and he was then bound by the express provisions of the partnership agreement, which became operative upon such voluntary retirement. He had agreed in the partnership agreement that upon voluntary retirement, he would not practice medicine in violation of the non-competition clause of the partnership agreement and his obligation was not terminated by the dissolution of the partnership. Fuller v. Brough, 159 Colo. 147, 411 P.2d 18.
Gibson also argues that the court was in error in its factual determination that his retirement was voluntary. It is the rule, as Gibson contends, that gross misconduct, lack of good faith, willful neglect of partnership obligations, or such other causes as are productive of serious and permanent injury to the partnership, or which render it impracticable to carry on the partnership business, may constitute a constructive expulsion of, or justify an involuntary retirement by, an innocent partner. See Fuller v. Brough, supra. However, there is nothing in this record to support Gibson's contention that he was forced to retire involuntarily by improper activities or conduct on the part of the other partners. He claimed that the partners diverted patients to other physicians. He also claimed that one of the partners, in treating Gibson's wife, prescribed a course of drug therapy with which he disapproved. With respect to these claims, the record supports the trial court's findings that such claims were either lacking in evidentiary support or were too trifling to render Gibson's withdrawal involuntary.
Gibson also contends that the trial court erred in refusing his request for a jury trial. This contention is contrary to the ruling of the Supreme Court in Setchell v. Dellacroce, 169 Colo. 212, 454 P.2d 804, wherein it is said:
"* * * Under our state constitution, trial by a jury in a civil action or proceeding is not a matter of right. Parker v. Plymptom, 85 Colo. 87, 273 P. 1030.
In Colorado Rules of Civil Procedure promulgated by the Supreme Court under its constitutional rule making power.
"It is apparent from the language of R.C.P.Colo. 38(a) that the right to trial by jury is guaranteed only in actions at law therein specifically named. Therefore, whether an issue of fact must be tried to a jury in Colorado depends upon the character of the action in which the issue is joined. Neikirk v. Boulder National Bank, 53 Colo. 350, 127 P. 137, quoted with approval in Miller v. District Court, 154 Colo. 125, 388 P.2d 763."
The relief sought in the present action was an injunction, and this action was therefor equitable in nature and defendant had no right to a jury trial. Defendant's further argument that the trial court committed reversible error in refusing to empanel an advisory jury is also without merit. The court did not err in refusing to try the issues with an advisory jury pursuant to the discretionary powers conferred upon the trial court by R.C.P. Colo. 39(c).
There remains for consideration Gibson's contention that the preliminary injunction was improperly ordered. His claims of error made in support of this argument are substantially the same as those he asserts as grounds for reversal of the permanent injunction and such claims are rejected for the reasons previously stated. He further contends that the preliminary injunction was improperly ordered because the court refused to permit him to present all of his evidence before issuing the injunction. *92 Since the trial court had, in the declaratory judgment action, determined that the covenant not to compete was valid and had ruled that violation of the covenant would be enjoined, the court properly entered the preliminary injunction upon a showing by the partners that Gibson was violating the covenant.
The judgments are affirmed.
SILVERSTEIN, C. J., and PIERCE, J., concur.