BOULDER MEDICAL CENTER, a Colorado corporation, Charles L. Aumiller, M.D., and John S. Avery, M.D., Plaintiffs-Appellees,

v.

Richard H. MOORE, M.D., Defendant-Appellant.

No. 81CA1149.

Colorado Court of Appeals, Div. II.

Sept. 2, 1982.

Hutchinson, Black, Hill, Buchanan & Cook, P. C., William D. Meyer, James L. Carpenter, Jr., Boulder, for plaintiffs-appellees.

Cohen, Brame & Smith, P. C., Jeffrey L. Smith, Lance P. Vanzant, Denver, for defendant-appellant.

STERNBERG, Judge.

In this suit on a covenant not to compete brought by Boulder Medical Center, P. C. (BMC), the defendant, Richard H. Moore, M.D., was enjoined from practicing medicine in Boulder County and assessed damages. Moore appeals and we affirm.

Moore became a partner in Boulder Medical Center in 1967. At that time, he executed a partnership agreement which included a covenant not to compete. Effective December 1, 1980, the business of the partnership was transferred to a professional corporation, and the partnership was dissolved. Moore and BMC then entered into an employment contract and buy-sell agreement. The employment contract contained a covenant not to compete which authorized injunctive relief, and prohibited Moore from practicing medicine in Boulder County for 5 years in the event he chose to terminate his employment. It also contained a liquidated damages clause. The buy-sell agreement provided for the re-purchase of Moore's stock by the corporation.

On September 8, 1981, Moore terminated his employment with BMC and announced his intention to practice medicine in Boulder County. BMC sued, and following trial, the court granted the injunction and damages under the liquidated damages clause. Section 8–2–113(2), C.R.S.1973 voids "[a]ny covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor ...." The court found that the covenant not to compete was not void under § 8–2–113(2), C.R.S.1973, because Moore fell within two exceptions to that subsection. The court reasoned that this situation involved a sale of a business and related to "professional staff," thus bringing it within exceptions (c) and (d) of § 8–2–113(2), C.R.S. 1973.

Moore first contends that the cited exceptions do not apply because he neither sold his business nor was he a part of the professional staff. However, there is evidence in the record that Moore had an interest in three separate items: the medical practice itself, a partnership which owns the equipment used in the practice, and a corporation which owns the real property on which BMC is located. Upon Moore's termination, he was entitled to payments from all three entities. This is adequate evidence supporting the trial court's conclusion that Moore sold his practice to BMC, and we may not overturn it. *Broncucia v. McGee,* 173 Colo. 22, 475 P.2d 336 (1970).

Moreover, "professional employee" has been defined as, "such persons as legal, engineering, scientific and medical personnel together with their junior professional assistants." *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974); *cf. Hammill v. Young,* 168 Mont. 81, 540 P.2d 971 (1975) (veterinarian); *In Re Richmond,* 285 Or. 469, 591 P.2d 728 (1978) (attorney). And, to exclude physicians from the definition of a professional, as suggested by Moore, would strain the plain meaning of the statute and result in an absurdity. *See Harding v. Industrial Commission,* 183 Colo. 52, 515 P.2d 95 (1973).

We note that effective April 6, 1982, the General Assembly added § 8–2–113(3), C.R.S.1973, to the statute at issue. It provides as follows:

"Any covenant not to compete provision of an employment, partnership, or corporate agreement between physicians which restricts the right of a physician to practice medicine, as defined in section 12–36–106, C.R.S.1973, upon termination of such agreement, shall be void; except that all other provisions of such an agreement enforceable at law, including provisions which require the payment of damages in an amount that is reasonably related to the injury suffered by reason of termination of the agreement, shall be enforceable. Provisions which require the payment of damages upon termination of the agreement may include, but not be limited to, damages related to competition." *See* Colo.Sess.Laws 1982, ch. 41 at 232.

However, because this statute was not in effect at the time of Moore's termination and at the time of trial, and because retrospective application is forbidden in the absence of plain language, this section does not apply here. *McCowan v. Equitable Life Assurance Society,* 116 Colo. 78, 179 P.2d 275 (1947).

Moore next contends that the equitable relief of an injunction should not be available to support a forfeiture. We disagree. Covenants not to compete have been upheld when reasonable. *Jim Sprague's Aetna Trailer Sales, Inc. v. Hruz,* 172 Colo. 469, 474 P.2d 216 (1970). And, in *Gibson v. Angros,* 30 Colo.App. 95, 491 P.2d 87 (1971), this court construed the identical covenant in question here and held that it was reasonable.

Moore's final contention is that BMC is not entitled to injunctive relief because its damages have been satisfied by the liquidated damages clause. However, the existence of liquidated damages will not preclude imposition of an injunction. *Restatement (Second) of Contracts* § 361 (1979); see Annot., 62 A.L.R.3d 970 (1975). Here, Moore specifically agreed to injunctive relief and liquidated damages in his employment contract. *Whittenberg v. Williams,* 110 Colo. 418, 135 P.2d 228 (1943) is dispositive:

"It thus appears that defendant entered into an apparently valid contract, then intentionally, openly, and publicly violated it, and at the same time sought to make profit out of that violation. Equity and good conscience can speak no word in his behalf."

Judgment affirmed.

SMITH and VAN CISE, JJ., concur.